United States District Court
Southern District of Texas
**ENTERED**
November 22, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUSTIN NOVICK, CHRIS KEHN, JAMES ABRAHAM, AND ZAHID ISLAM, on behalf of themselves and others similarly situated, §§§§§ | |
| Plaintiffs, § | |
| vs. § | CIVIL ACTION NO. 16cv0730 |
| SHIPCOM WIRELESS, INC., §§§ | |
| Defendant. § | |

# MEMORANDUM AND ORDER ON
# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CALCULATION OF DAMAGES, IF ANY

On June 22, 2016, the parties consented to proceed before a United States magistrate judge for all purposes, including the entry of a final judgment under 28 U.S.C. § 636(c). (Docket Entry #15). In this action, Plaintiffs Justin Novick ("Novick"), Chris Kehn ("Kehn"), James Abraham ("Abraham"), Zahid Islam ("Islam"), Leslie Woods ("Woods"), and Charles Bethas ("Bethas") (collectively, "Plaintiffs") complain that Defendant Shipcom Wireless, Inc. ("Defendant," "Shipcom," "the Company") failed to pay them overtime wages, in violation of the Fair Labor Standards Act ["FLSA," "the Act"], codified at 29 U.S.C.A. §§ 201 *et seq*. Pending before the court is a motion for partial summary judgment, which was filed by Defendant. (Defendant's Motion for Partial Summary Judgment on the Calculation of Damages, If Any ["Motion"], Docket Entry #22). Plaintiffs have responded in opposition to the motion, and Defendant has replied. (Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment on the Calculation of Damages, If Any ["Response"], Docket Entry #23; Defendant's Reply in Support of Its Motion for Partial Summary Judgment on the Calculation of Damages ["Reply"], Docket Entry #24). After considering

1

the pleadings, the evidence submitted, and the applicable law, it is **ORDERED** that Defendant's motion is **GRANTED,** in part, and **DENIED**, in part.

**Background**

Defendant Shipcom is a software company headquartered in Houston, Texas. (Plaintiffs' First Amended Collective Action Complaint ["Complaint"] at 3). Plaintiffs Justin Novick, Chris Kehn, and Charles Bethas were employed by Defendant as, "Trainers," between 2014 and 2016. (Complaint ¶¶14, 15; Plaintiffs' 9-7-16 Notice of Filing Additional Consent to Become a Party Plaintiff, Docket Entry #20). Novick worked for the Company from May 15, 2014, to March, 2015; Kehn worked for Shipcom from July 7, 2014, to March, 2016; and Bethas worked for Shipcom from August 7, 2014, to June, 2016. (Motion, Exhibit ["Ex."] A ["Novick Offer Letter"] at 1; Motion, Ex. B ["Kehn Offer Letter"] at 1; Motion, Ex. D ["Bethas Offer Letter"] at 1). As "Trainers," their duties included traveling to medical facilities that owned Defendant's patient management software to train employees on the software platform. (Complaint at 3-4). At all times relevant to this action, Novick was classified as an "exempt" employee, as outlined in 29 CFR §§ 541 *et seq*. (Motion at 3). Kehn and Bethas, however, were initially classified as "exempt" employees, but later reclassified as a "non-exempt" employees. (Complaint ¶15; Motion, Ex. I at 1 ["Kehn Reclassification Letter"]; Motion, Ex. I at 3 ["Bethas Reclassification Letter"].

Plaintiff Zahid Islam was hired by Defendant as an "Accounts Payable Clerk/Financial Analyst" on July 18, 2014. (Motion at 2; Complaint ¶17). In that capacity, Islam assisted with the reconciliation of accounts and vendor statements; processed invoices; and performed data entry services, as well as closing Shipcom's financial ledger, monthly. (Complaint ¶17). While Islam worked for Defendant, "Accounts Payable Clerk/Financial Analyst" was classified as an "exempt" position. However, after Islam left the Company, in April, 2015, that position was re-classified as "non-exempt." (*Id*.).

2

Plaintiff James Abraham worked as a "Field Support Engineer" for Shipcom between January 26, 2015, and November, 2015. (Complaint ¶16; Motion at 2; Motion, Ex. E ["Abraham Offer Letter"] at 1). As a "Field Support Engineer," Abraham was required to travel to Defendant's clients' facilities to perform technical services, including installation of computer software and servers; assigning IP addresses to devices; and repairing improperly installed wiring. (Complaint ¶16). Plaintiffs claim that Abraham's "primary duties were, at all times, those of a non-exempt employee under the FLSA[.]" However, his Employment Offer Letter shows that he was hired as an exempt employee. (Complaint ¶16; Motion, Ex. E ["Abraham Offer Letter"] at 1).

Plaintiff Leslie Woods was employed by Shipcom as a "Travel Coordinator," from July 6, 2015, to March, 2016. (Complaint ¶18; Motion at 2; Motion, Ex. F ["Woods Offer Letter at 1"]. Woods was responsible for booking work related travel for Shipcom employees. (Complaint ¶18). She was initially classified as an "exempt" employee, and received a salary "for all hours worked." Defendant later determined, however, that Woods' position was "non-exempt," and it began to compensate her on an hourly basis. (*Id*.).

Plaintiffs claim that, at the time of his or her interview, each was told that he or she would be working a 40 hour week, and would be paid a salary for a set weekly schedule. (Response at 3, Response, Ex. A ["Novick Declaration"] ¶ 3; Response, Ex. B ["Abraham Declaration"] ¶3; Response, Ex. C ["Islam Declaration"] ¶3; Response, Ex. D ["Bethas Declaration"] ¶3; Response, Ex. E ["Woods Declaration"] ¶3 ). Plaintiffs allege, however, that each "routinely worked in excess of 40 hours per workweek during [his or her] employment with Defendant[,]" but were not paid any overtime wages. (Complaint ¶¶14-18). For example, Abraham claims that, on average, he worked 55 hours, each week. (*Id*. ¶16). Likewise, Woods claims that she worked between 60 and 70 hours, each week. (*See id*. ¶18). Plaintiffs contend that, as "non-exempt employees," they are entitled to overtime compensation, and that Defendant's failure to pay those wages constitutes "a clear

violation" of the FLSA. (*Id*. ¶19).

On March 18, 2016, Plaintiffs filed this collective action against Shipcom. (Plaintiffs' Collective Action Complaint, Docket Entry #1). In their complaint, Plaintiffs allege that Defendant's "practice of failing to pay overtime for hours worked in excess of 40 hours in a [workweek] [] violates the FLSA." (*Id*. ¶¶ 3, 22) (citing 29 C.F.R. § 778.207(b)). Plaintiffs contend further that Shipcom is required to pay them "at one and one-half (1 ½) times their respective regular hourly rates" for all hours that they worked, over 40 hours in a single work week. (*Id*. ¶16) (citing 29 U.S.C. § 207(a)).On July 27, 2016, Plaintiffs amended their complaint to include additional information describing Defendant as an "enterprise;" to elaborate on Abraham's duties as a "Field Support Engineer;" and to add Woods as a named party plaintiff. (Complaint ¶5, 9, 11, 16, 18). Plaintiffs repeated that they are entitled to unpaid overtime wages that are equal to one and one-half times their regular rate of pay, for all hours worked over 40 hours in a workweek. (*Id*. ¶25).

On September 26, 2016, Defendant filed this motion for partial summary judgment. In support of its motion, the Company contends that, should the court award any unpaid overtime wages, it should apply "the fluctuating-workweek method" to calculate the overtime compensation due. (Motion at 4). Defendant argues, specifically, that Plaintiffs' recovery should be limited to an "additional half-time premium for hours worked in excess of 40 hours per workweek." (*Id*.). Shipcom also requests that any overtime pay awarded to Plaintiffs be limited to the hours that they reported in the Company's timekeeping system. (*Id*. at 7). Having reviewed the pleadings, the evidence, and the applicable law, Defendant's motion is granted, in part, and denied, in part.

**Standard of Review**

Summary judgment is appropriate if "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant [is] entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc*., 623 F.3d 271,

275-76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Mack v. Equable Ascent Financial, L.L.C.,* 748 F.3d 663, 665 (S.D. Tex. 2014) (citations omitted); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "'If the moving party fails to meet its initial burden, its motion for summary judgment must be denied, regardless of the non-movant['s] response.'" *Exxon Mobil Corp. v. U.S.*, Nos. H-10-2386, H-11-1814, 2015 WL 3513949, *at 15 (S.D. Tex. June 4, 2015) (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002).

If the moving party meets its Rule 56 burden, however, the non-moving parties cannot merely rest on the allegations in their pleadings. *See Lincoln*, 401 F.3d at 349-50; *see also Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001). Rather, they are required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Kee*, 247 F.3d at 210 (citations omitted); *Boudreaux*, 402 F.3d at 540; *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005). If they do so, their evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.

2003); *see Hillman,* 697 F.3d at 302. If the non-movants fail to respond appropriately, or if they fail to respond at all, summary judgment is not awarded to the moving party simply by default. *See Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *see also Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014). Instead, as always, summary judgment is appropriate only if the moving party has demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *Day,* 768 F.3d at 435.

**Discussion**

### *The Fluctuating-Workweek Method of Calculating Overtime*

The Fair Labor Standards Act provides that "no employer shall employ any of [its] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). If an employer is liable under this provision of the FLSA, the court must then determine, as a matter of law, the appropriate method to calculate the amount of overtime pay owed to the employee. *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). The court must apply either the "standard method," which calculates overtime pay using a multiplier of one and one-half times the regular rate of pay, or the "fluctuating-workweek method," which utilizes a multiplier of only one-half of the regular rate of pay. *Id.* (citing *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 381 (5th Cir. 2013).

The Fifth Circuit has held that the "fluctuating-workweek method" ("FWW") is appropriate only if the employer and employee "have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours." *Black*, 732 F.3d at 498 (citing *Overnight Motor Trans. Co. v. Missel*, 316 U.S. 572, 580, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (holding that a FWW half-time multiplier may be used to calculate overtime if the employee has been working under a "contract [that] is for a

weekly wage with variable or fluctuating hours.")). Further, the employer and employee must have agreed that a "fixed salary" would compensate the employee for "all of the hours []he worked each week." *Id.* at 501; *Sampson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) (FWW method requires only that "[t]here is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than working 40 hours or some other fixed weekly period."). In that regard, the employee carries the burden of proof on whether an agreement has been reached. *Sampson*, 242 F.3d at 636. In determining whether the parties did so agree, the court must consider the parties' initial understanding of the employment arrangement, as well as the parties' conduct during the period of employment. *Id.* at 499. Accordingly, the calculation of unpaid overtime is "a mixed question of law and fact." *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 381 (5th Cir. 2013). First, the court must determine whether the parties have agreed to a fixed weekly wage for varying hours, which is a question of fact. *Faniola v. Proteus Services, LLC*, No. H-14-3081, 2015 WL 6666213, at *3 (S.D. Tex. Oct. 13, 2015). Only then may the court choose the appropriate methodology to calculate the total overtime award, which is ultimately, a question of law. *Id.*

### *The Parties' Initial Understanding*

Plaintiffs admit that they knew that they would be salaried employees while working for Shipcom. (Response at 3). However, they insist that they "understood that [their] salar[ies] would compensate them for a specific number of hours and/or a set schedule." (*Id.*). In support of their argument, Plaintiffs have submitted sworn declarations, stating that, during their individual interviews with the Company, each Plaintiff was informed that he or she would work a set schedule, or that he or she would work a 40-hour workweek. For example, Abraham claims that his interviewers told him that he would be working from 8:00 a.m. to 5:00 p.m. (Abraham Declaration ¶3). Likewise, Islam claims that his interviewers informed him that his "core [work] hours" would

7

be from 8:00 a.m. to 5:00 p.m. (Islam Declaration ¶3). Bethas alleges that he was also told to report to work from 7:30 a.m. to 3:30 p.m. (Bethas Declaration ¶3). Finally, Woods reports that she was informed that she was required to work 40 hours in one week. (Woods Declaration ¶3).

In response to these declarations, Defendant contends that any oral promise of "a set schedule of hours" is irrelevant, because each Plaintiff signed an employment agreement, which contains a compensation provision stating, expressly, that the salary is payment for "*all services* to be performed during [his or her] employment." (Reply at 2) (emphasis added) (citing Novick Offer Letter at 1; Kehn Offer Letter at 1; Islam Offer Letter at 2; Bethas Offer Letter at 1; Abraham Offer Letter at 1; Woods Offer Letter at 1). Shipcom argues further that each employment agreement, except those for Woods and Abraham,[1] contains a merger clause, stating that the document is "the entire and final agreement between the parties . . . and that it supersedes all prior [and contemporaneous] written or oral [] agreements, understandings and negotiations between the parties." (Novick Offer Letter at 1; Kehn Offer Letter at 1; Islam Offer Letter at 2; Bethas Offer Letter at 1). The Company insists that these employment agreements show that the parties arrived at an understanding that their salaries covered all hours worked. (*See id*. at 2-3).

Under the FWW statute and regulations, to satisfy the "clear mutual understanding" requirement, an employer merely needs *to communicate* that the employee's salary covers all hours worked. *Clark v. Williamson County*, No. A-10-CA-869 LY, 2012 WL 1222950, at *5 (W.D. Tex. Apr. 11, 2012) (emphasis added). In fact, the regulations do not require that an employer obtain written acknowledgment that the pay plan has been explained to its employees. *Lane v. Crescent Services, LLC*, No. 2:12-cv-368, 2013 WL 12106123, at *6 (S.D. Tex. Sept. 17, 2013). If, however, an employment agreement containing such a plan has been distributed, it is generally accepted that, absent fraud or mental incompetence, a person who intentionally signs that document is bound by

---

[1] Neither Woods' nor Abrahams' employment agreement contained a merger clause.

its content. *Id.*; *See also Butschek v. Southwestern Bell Telephone Co.*, 952 F.Supp. 470, 478 (S.D. Tex. 1996) (plaintiff is bound by content of a document that he signed regardless of whether he took content of document to heart).

As applied here, each Plaintiff has failed to show that a fact issue exists regarding his or her initial understanding of the terms of the employment agreement. Although each Plaintiff has submitted a declaration stating that he or she was promised a specific work schedule, each later signed an agreement containing a compensation provision, which explicitly states that his or her salary covers "all services [] performed during [] [his or her] employment." (Novick Offer Letter at 1; Kehn Offer Letter at 1; Islam Offer Letter at 2; Bethas Offer Letter at 1; Abraham Offer Letter at 1; Woods Offer Letter at 1). Plaintiffs' assent to the agreement is evidence of "a clear mutual understanding that the fixed salary is compensation [] for the hours worked each week, whatever their number, rather than for working 40 hours [in one week]." *Sampson*, 242 F.3d at 636 (citing 29 C.F.R. § 778.114(a); 29 C.F.R. § 778.114(c)); *Lane*, 2013 WL 12106123, at *6. On this point, no question of fact remains.

### *The Parties' Course of Conduct*

Defendant also contends that Plaintiffs' subsequent conduct is evidence that they understood that their hours may vary from week to week, and that such variance would not result in additional pay. (Motion at 5-6; Reply at 3-4). Shipcom points out that Plaintiffs regularly worked more than 40 hours a week during their employment at the Company, largely without complaint. (Motion at 6, Reply at 4). Indeed, Plaintiffs admit that they "routinely worked in excess of 40 hours per [workweek]," with Abraham averaging 55 hours each week, and Woods averaging 60 to 70 hours each week. (Complaint ¶¶14-18). Moreover, Defendant has produced Plaintiffs' self-reported time sheets, which show that each worked 40-plus hour weeks for the majority of their employment with the Company. (*See* Motion Ex. G). Despite working long hours, however, Islam is the only Plaintiff

9

who insisted, at the time, that he was entitled to overtime pay. (Response at 4; Islam Declaration at ¶5). Islam testified that he complained about his pay to "multiple representatives at Shipcom," including his immediate supervisor; an IT manager; an HR representative; and the Company's in-house legal counsel. (*Id.*).[2]

Defendant insists that Plaintiffs' course of conduct demonstrates that they agreed that their respective salaries covered all hours worked. (Reply at 3-4). In doing so, the Company cites *Roche v. S-3 Pump Service, Inc.*, as support for its argument. 154 F.Supp.3d 441 (W.D. Tex. 2016). In *Roche*, the court found that the defendant had produced competent summary judgment evidence demonstrating that there was a mutual understanding that the employees were paid a fixed salary, regardless of the number of hours worked. *Id.* at 450. In that case, the plaintiffs testified that compensation and scheduling had not been discussed at the time of hiring, but that "there was a general understanding that they would be paid a fixed salary with [] bonuses." *Id.* The *Roche* court stated that, although the employees worked long hours without receiving overtime pay, they "continued in their employment after receipt of their first paychecks." *Id.* The court held that this "constitute[d] some evidence that the employees were aware at the time of hire that the salary covered all hours [] worked." *Id.* Here, as in *Roche,* Plaintiffs continued to work after they received their first pay check. Even had each Plaintiff not clearly understood the terms of his or her employment when he or she began working, each one must have gathered that information after the first full pay period, seeing that he or she was not being paid overtime wages. *Lane*, 2013 WL 12106124, at * 6; *Roche*, 154 F.Supp.3d at 450. In such circumstances, the existence of a FWW agreement may be inferred from the parties' conduct. *Black*, 732 F.3d at 500 (citing *Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 681 n. 8 (7th Cir. 2010).

---

[2]It is unclear from the record whether Islam complained on multiple occasions, or, if he made an isolated complaint to multiple persons. Nor does the record specify the date on which his complaint was made, or the proximity of the complaint to Islam's departure from the Company.

Plaintiffs, on the other hand, liken their circumstances to those of the plaintiff in *Black v. SettlePou, P.C.* 732 F.3d 492 (5th Cir. 2013). In *Black*, the plaintiff testified that she understood that she would be paid a fixed salary to work a 37 ½ hour workweek, and that, when she found herself working more hours than that, she repeatedly lodged verbal and written complaints with her supervisors and the defendant's human resource directors, alleging that she was entitled to overtime pay. *Id.* at 501. The *Black* court determined, ultimately, that the district court erred in using the FWW method to calculate the employee's overtime pay. *Id.* The court held that the "[plaintiff's] conduct in her continued protests of [her] employer's failure to compensate her for her overtime hours [] shows that she did not agree that her fixed weekly salary should compensate her for all of the hours she worked each week." *Id.*

Here, in contrast to the plaintiff in *Black*, however, only one of the six named complainants protested that he was not being paid overtime wages. And, although Plaintiffs claim that Islam complained to several Shipcom higher ups, they have not shown that he "immediately and repeatedly voic[ed his] disagreement with [his] lack of overtime pay[,]" as did the plaintiff in *Black*. *Id.* Nonetheless, on this record, Islam's objections are sufficient to raise a genuine fact issue, on whether he had a "clear mutual understanding" of the terms of his employment agreement. Additional information regarding the nature and frequency of Islam's complaints may prove that he did not, in fact, agree to be paid a fixed salary for any number of hours. His contradictory behavior elicits competing inferences, making summary judgment inappropriate. On this record, the proper method to calculate Islam's overtime pay is best resolved at a later stage in the proceedings. For that reason, summary judgment on this issue, as to Islam's claim only, is denied. Summary judgment on this issue, as to the claims brought by all other Plaintiffs, is granted.

### *Plaintiffs' Recovery Limited to Hours Reported in Company's Timekeeping System*

In the event that the court finds that Defendant must pay Plaintiffs' overtime wages, it maintains that their recoveries should be limited to the hours that they reported in the Company's timekeeping system. (Motion at 7; Reply at 4-5). Plaintiffs respond, in opposition, claiming that their recoveries should not be so limited, because of the "gross[] under report[ing,]" that was caused by Defendant's instructions to enter "either 40 hours or close to 40 hours [] each week." (Response at 5). Plaintiffs complain, specifically, that Novick and Islam have under reported their hours due to pressure to do so from Defendant. (*See id.*). However, Shipcom has submitted time sheets from Islam and Novick, which show that those employees consistently reported working far more than 40 hours a week. (*See* Motion at Ex. G). In fact, they apparently worked more than 40 hours a week for most of the time that they worked for the Company. (*Id.*). Given the specificity and diversity of the hours logged on their time sheets, Shipcom had no reason to believe that Plaintiffs were inaccurately reporting their work hours. Further, Plaintiffs have not produced any evidence about any Shipcom representative who allegedly instructed them to under report their hours. Plaintiffs may not "deliberately evade [Shipcom's reporting policy]," only to later claim that they were wrongfully denied overtime wages on the basis of hours that they declined to report. *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016). For that reason, Defendant's motion for summary judgment on this issue is granted.

In sum, Defendant's Motion for Partial Summary Judgment on the Calculation of Damages, If Any, is granted, in part, and, denied, in part. Defendant has established that the parties reached a "clear mutual understanding" regarding the compensation terms of each Plaintiffs' employment, excepting Islam. Defendant has also presented competent summary judgment evidence establishing that Plaintiffs' recovery, if any, should be limited to the hours submitted in the Company's timekeeping system.

**Conclusion**

Accordingly, it is **ORDERED** that Defendant's Motion for Partial Summary Judgment on the Calculation of Damages, If Any is **GRANTED,** in part, and **DENIED**, in part.

**SIGNED** at Houston, Texas, this 22nd day of November, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**