**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JUSTIN NOVICK, CHRIS KEHN,** | § | |
| **JAMES ABRAHAM, ZAHID ISLAM,** | § | |
| **and LESLIE WOODS, and on behalf of** | § | |
| **themselves and others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:16-cv-00730** |
| | § | |
| **SHIPCOM WIRELESS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

_____

**PLAINTIFFS' MOTION FOR NOTICE TO POTENTIAL CLASS MEMBERS**
_____

COME NOW, Plaintiffs Justin Novick, Chris Kehn, James Abraham, Zahid Islam, Leslie

Woods, and Charles Bethas (collectively, "Plaintiffs"), on behalf of themselves and other

similarly situated employees of Shipcom Wireless, Inc. ("Shipcom"), and file this Motion for

Notice to Potential Class Members, and would show unto the Court as follows:

**I.**
**OVERVIEW**

Shipcom violated the Fair Labor Standards Act ("FLSA") by failing to pay individuals

employed in the positions of Trainer, Accounts Payable Clerk/Financial Analyst, Field Support

Engineer, and Travel Coordinator for hours worked in excess of forty (40) in a single

workweek at the applicable overtime premium rate.  Shipcom recognized that it had improperly

classified individuals working in these positions and reclassified all such positions from

"exempt" to "non-exempt" in 2015.  *See* Defendant's Answer and Affirmative and Other

Defenses to Plaintiffs' First Amended Complaint (Doc. 19) at "Nineteenth Defense" at 9.

Plaintiffs, who were formerly employed in the positions of Trainer, Accounts Payable Clerk/Financial Analyst, Field Support Engineer, and Travel Coordinator have filed this lawsuit—a collective action under the FLSA—on behalf of themselves and others similarly situated to recover unpaid overtime wages and liquidated damages as a result of Shipcom's policy and practice. Plaintiffs submit their own testimony reflecting that they were subjected to the same duties, treatment, and pay practices as other individuals who worked in the positions in which Plaintiffs worked—which pay practices violated the FLSA, as acknowledged by Shipcom—while working for Shipcom. The evidence Plaintiffs have been able to gather to date is more than sufficient to meet the lenient standards for notice to potential class members.

## II.
### FACTUAL BACKGROUND

### A. Trainers

Plaintiff Justin Novick ("Novick") was employed as a Trainer for Shipcom from approximately May 2014 to March 2015. (*See* Novick Declaration, attached hereto as Exhibit A, at ¶ 2.) In his position, Novick traveled to various U.S. Veterans Health Administration ("VA") medical facilities in the United States, training logistics and medical personnel on how to use inventory management computer software installed by Shipcom on kiosks located throughout the medical facilities. (Exhibit A at ¶ 3.) Novick routinely worked in excess of 40 hours per week during his employment with Shipcom, but Shipcom classified him as an "exempt" employee under the FLSA and paid him a salary without regard to the number of hours he worked. (*Id.* at ¶ 4.) Shipcom did not pay Novick overtime when he worked more than 40 hours in a work week. (*Id.*) Following his separation of employment from Shipcom, Novick learned that Shipcom had reclassified Trainers from "exempt" to "non-exempt" employees under the FLSA. (*Id.* at ¶ 6.)

Plaintiff Christopher Kehn ("Kehn") was employed as a Trainer for Shipcom between approximately June 2014 and March 2016.  (*See* Novick Declaration, attached hereto as Exhibit B, at ¶ 2.)  As a Trainer, Kehn also traveled to various VA medical facilities in the United States, training medical personnel on how to use computer software installed by Shipcom on kiosks located throughout the medical facilities.  (*Id.* at ¶ 3.)  Like Novick, Kehn regularly worked more than 40 hours per week during his employment with Shipcom, and like Novick and other Trainers, Shipcom classified Novick as "exempt" under the FLSA and paid him a straight salary.  (*Id.* at ¶ 4.)  In the latter part of 2015, Shipcom reclassified the Trainer position to a "non-exempt" position.  (*Id.* at ¶ 5; Bethas Declaration, attached hereto as Exhibit C, at ¶ 5.)  At that time, although Kehn's duties did not change, Shipcom began paying him and other Trainers on an hourly basis, as opposed to a salary, and Kehn and other Trainers became eligible for overtime compensation if they worked more than 40 hours in a work week.  (*Id.*)  Shipcom sent an email to Kehn and other employees around that time, explaining the reclassification, and indicating that Shipcom was going to pay Kehn for overtime hours that he had previously recorded in the Deltek timekeeping system.  (*Id.*)

Plaintiff Charles Bethas ("Bethas") worked as a Trainer for Shipcom from approximately August 2014 to June 2016.  (Exhibit C, at ¶ 2.)  Bethas' duties consisted of traveling to various VA medical facilities in the United States, training medical personnel on how to use patient management computer software installed by Shipcom on kiosks and handheld devices, as well Web applications on desktop computers located throughout the medical facilities.  (*Id.* at ¶ 3.)  Like other Trainers, Bethas customarily worked more than 40 hours in a work week during his employment with Shipcom.  (*Id.* at ¶ 4.)  In particular, Bethas worked, on average, 60 hours each work week.  (*Id.*)  When Shipcom reclassified the Trainer position from an 'exempt' position to a 'non-exempt' position, although Bethas' duties did not

3

change, Shipcom began paying him and other Trainers on an hourly basis, as opposed to a salary, and Bethas became eligible for overtime compensation if he worked more than 40 hours in a work week. (*Id.* at ¶ 5.) Shipcom sent an email to Bethas and other employees around that time, explaining the reclassification, and indicating that Shipcom was going to pay Bethas for overtime hours that he had previously recorded in the Deltek timekeeping system. (*Id.*)

### B.  Field Support Engineers

Plaintiff James Abraham ("Abraham") was employed as a Field Support Engineer for Shipcom between approximately January and November 2015. (*See* Abraham Declaration, attached hereto as Exhibit D, at ¶ 2.) As a Field Support Engineer, Abraham's duties consisted of traveling to various VA medical facilities in the United States, performing the duties of a technician, which included configuring kiosks and handhelds located throughout the medical facilities, installing computer software, assigning IP addresses to kiosks and handhelds, installing servers, and correctly installing improperly installed wiring. (*Id.* at ¶ 3.)

As was the case with the Trainers, Abraham regularly worked more than 40 hours per week during his employment with Shipcom. (*Id.* at ¶ 6.) Nevertheless, Shipcom classified Abraham as "exempt" under the FLSA and paid him a straight salary, regardless of the number of hours he worked. (*Id.*) In 2015, Shipcom reclassified the Field Support Engineer position from "exempt" to "non-exempt" under the FLSA. (*Id.* at ¶ 4.)

### C.  Accounts Payable Clerks/Financial Analysts

Plaintiff Zahid Islam ("Islam") was employed as an Accounts Payable Clerk/Financial Analyst for Shipcom between approximately July 2014 and April 2015. (*See* Islam Declaration, attached hereto as Exhibit E, at ¶ 2.) As an Accounts Payable Clerk/Financial Analyst, Islam's duties consisted of performing the monthly closing of the ledger, assisting with the reconciliation of accounts and vendor statements, communicating with suppliers,

4

processing invoices, generating reports, and performing data entry.  (*Id.* at ¶3.)

As was the case with the Trainers and Field Support Engineers, Islam regularly worked in excess of 40 hours per week during his employment with Shipcom.  (*Id.* at ¶ 4.)  However, Shipcom classified Islam as "exempt" under the FLSA and paid him a straight salary, regardless of the number of hours he worked.  (*Id.*)  Following Islam's separation of employment from Shipcom, the company reclassified the Accounts Payable Clerk/Financial Analyst position from "exempt" to "non-exempt" under the FLSA.  (*Id.* at ¶ 5; *see also,* Doc. 19 at "Nineteenth Defense" at 9.)

### D.  Travel Coordinators

Plaintiff Leslie Woods ("Woods") was employed as Travel Coordinator for Shipcom between approximately July 2015 and March 2016.  (*See* Woods Declaration, attached hereto as Exhibit F, at ¶ 2.)  In her position, Woods was responsible for arranging and booking the airfare and hotels for various employees who traveled while performing their duties for Shipcom.  (*Id.* at ¶ 3.)

Shipcom initially classified Woods as an exempt employee, paying her a salary for all hours she worked.  (*Id.* at ¶ 4.)  However, Shipcom later reclassified the Travel Coordinator position from an "exempt" position to a "non-exempt" position, at which time it began paying Woods hourly.  (*Id.*; *see also,* Doc. 19 at "Nineteenth Defense" at 9.)  Woods' duties remained the same following Shipcom's reclassification of her position.  (*Id.*)  Prior to Shipcom's reclassification of Woods' position from "exempt" to "non-exempt," Woods worked, on average, 60-70 hours each work week.  (*Id.*)

### III. ARGUMENT

### A.   The FLSA Authorizes Collective Actions.

Where the employer's violation of the FLSA is alleged to be widespread, aggrieved employees have the right to bring an action "for and in behalf of . . . themselves and other

employees similarly situated."  29 U.S.C. § 216(b).  Actions pursued in such a representative capacity are referred to as "collective actions."[1] Federal courts in Texas have a long tradition of using the collective action procedure to protect employees who are denied their proper overtime pay.  *See, e.g., Riojas v. Seal Produce, lnc.*, 82. F.R.D. 613, 619 (S.D. Tax. 1979) (since the FLSA was "meant to aid injured parties," it is "only sensible that procedures facilitating this intent [such as providing notice to potential class members] would be favored.").

Perhaps even more importantly, the United States Supreme Court has expressly held that courts may implement the collective action procedure by facilitating the issuance of notice to potential class members.[2] *Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165 (1989). Commenting favorably upon collective actions, the Supreme Court noted:

> "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."

*Sperling,* 493 U.S. at 170.  However, these benefits depend upon the potential class members' receipt of a notice which is "timely, accurate and informative."  *Blake v. Colonial Savings, FA,* 2004 WL 1925535 (S.D. Tex. August 16, 2004) (J. Harmon) *citing Sperling*, at 172.

## B.   The Legal Standard - Similarly Situated.

The Fifth Circuit has identified two different procedures used by courts to determine whether to facilitate notice.  *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213 (5th Cir.

---

[1]      As discussed *infra*, a collective action has important procedural distinctions from a class action brought under Rule 23 of the Federal Rules of Civil Procedure.  For example, unlike the traditional Rule 23 class action, "no employee shall be a party plaintiff to [a collective action] unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b); *see also LaChapelle v. Owens-Illinois, 1nc.*, 513 F.2d 206 (5th Cir. 1975) (distinguishing the "opt-in" collective action from the "opt-out" Rule 23 class action.).  Accordingly, certification of a collective action gives potential class members: 1) notice of the suit; and 2) the opportunity to protect their rights by filing a consent.

[2]      Many of the authorities cited by Plaintiffs concern violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., (ADEA), as opposed to the FLSA.  The ADEA, however, incorporates the collective action remedy of the FLSA into its enforcement scheme, and, thus, these authorities are equally persuasive.  *See* 29 U.S.C. § 626(b); *see also Sperling,* 493 U.S. at 167-168.

1995).   The first approach—the *Shushan* method—is premised upon a class action filed under

Rule 23 and espouses the view that the court should look to "numerosity," "commonality,"

"typicality," and "adequacy of representation" to determine whether a class should be certified.

*Mooney*, 54 F.3d at 1214, *citing Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo.

1990).   The second—the "two-step" method—involves a two-step analysis of FLSA section

16(b)'s similarly situated requirement.   *Mooney*, 54 F.3d at 1214.   The two steps consist of a

lenient "conditional certification" decision, followed by a more rigorous certification decision

after discovery is complete.   *Mooney*, 54 F.3d at 1214.

Notably, *every* appellate court to consider the issue has rejected *Shushan*'s premise—

that Rule 23 should apply to collective actions under section 16(b).[3]   Further, the Fifth Circuit

has held that "Rule 23 'opt-out' class actions . . . cannot be reconciled with section 16(b) suits

[and] are not permissible" in such actions.   *Price v. Maryland Cas. Co.*, 561 F.2d 609, 611 (5[th]

Cir. 1977).   Rather, the FLSA collective action procedure created by section 16(b) "constitutes

a congressionally developed alternative to the Rule 23 procedures."   *Donovan v. University of

Texas at El Paso*, 643 F.2d. 1201, 1206 (5th Cir. 1981).

In contrast, the appellate courts (as well as the vast majority of district courts) have

approved of the two-step method developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.

1987).   *See, e.g., Theissen*, 267 F.3d at 1105; *Hipp v. LibertyNat'l Life lns. Co.*, 252 F.3d 1208,

1219 (11th Cir. 2001).[4]   Under this approach, the district court makes an early decision as to

whether notice of the action should be given to potential class members based on a preliminary

---

[3]        *See, e.g., De Asencio v. Tyson Foods, Inc.*, 342 F.3d 30l, 306 (3rd Cir. 2003) (noting that FLSA
cases *cannot* be certified under Rule 23, and that Rule 23 is *inapplicable* to FLSA actions*)*; *Theissen v. GE
CapitalCarp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) ("to interpret the 'similarly situated' standard by simply
incorporating the requirements of Rule 23 . . . would effectively ignore Congress' directive."); *Grayson v. K Mart
Corp.*, 79 F.3d 1086, 1096 n. 12 (11th Cir. 1996) (the requirements for pursuing a 216(b) class action are
independent of, and unrelated to, the requirements for a class action under Rule 23 . . .); *King v. GE Co.*, 960 F.2d
617, 621 (7th Cir. 1992); *E.E.O.C. v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990)
(FLSA section 16(b) creates a vehicle, "wholly apart from Fed. R. Civ. P. 23, for employees to bring . . . class
actions for damages"); *see also, Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 809-10 (S.D. Tex.
2003) (noting that every appellate court to have addressed the issue has rejected *Shushan*'s premise).

[4]        As Judge Lynn recognized, the two-step method is the "prevailing test among the federal courts .
. . ."  *Barnett v. Countrywide Credit Industries, Inc.*, 2002 WL 1023161, at *2 (N.D. Tex. May 21, 2002).

showing of similar situations.  *Mooney*, 54 F.3d at 1214.  These cases make it clear that the "similarly situated" requirement is "considerably less stringent" than Rule 23's requirements. *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996).

### C.   When Are Potential Class Members "Similarly Situated"?

"Similarly situated," as contemplated by section 16(b), does not mean identically situated.  *See Grayson*, 79 F.3d at 1096; *Riojas*, 82 F.R.D. at 616; *see also Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947 (M.D.Fla. 1994).  Therefore, **"[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."** *Donohue v. Francis Services, Inc.*, 2004 WL 1161366, (E.D.La. May 24, 2004) (emphasis added); *see also, Sandel v. Fairfield Industries, Inc.*, 2014 WL 1379902, *4 (S.D. Tex. Apr. 8, 2014) (Miller, J.) (granting conditional certification of a group of plaintiffs in different positions who performed different jobs but who were affected by the same pay policy).

Instead, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Helmrich & Payne Int'l Drilling Co.*, 1992 WL 91946, *2 (E.D.La. April 16, 1992) (certifying class of workers who were required to perform work prior to and after their paid shifts).  Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id.*; *see also Wyatt v. Pride Offshore, Inc.*, 1996 WL 509654, *2 (E.D.La. Sept. 6, 1996).  The similarly-situated requirement is "more elastic and less stringent" than that for joinder under Rule 20(a) or for separate trials under Rule 42(b).  *Grayson v. K*

*Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.1996), *cert. denied*, 117 S. Ct. 435 (1996).

To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and, thereby, would serve to undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F.Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann-LaRoche lnc.*, 118 F.R.D. 392, 407 (D.N.J.), *aff'd,* 862 F.2d 439 (3rd Cir. 1988), *aff'd,* 493 U.S. 165 (1989) ("Notice to absent class members need not await a conclusive finding of 'similar situations.'"). Instead, the record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon "substantial allegations." *Id.*; *see also Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991). *Belcher v. Shoney's Inc.*, 927 F.Supp. 249, 251 (M.D. Tenn. 1996). Thus, the court's decision is usually made "using a fairly lenient standard" and is "based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214. Evaluation under the lenient "similarly situated" standard "typically results in 'conditional certification' of a representative class" and the issuance of a court-approved notice. *Id.*[5]

Courts have applied a variety of criteria in finding the necessary factual and/or legal nexus. Some courts have found plaintiffs and putative class members are "similarly situated" if they were victims of "a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214. While the existence of a "unified policy, plan or scheme" is sufficient to meet the test, it is not required to satisfy the more liberal "similarly situated" requirement of section 216(b). *Grayson*, at 1096. Additionally, employees who are "similarly situated" with respect to their job requirements and with regard to their pay provisions possess the mandatory nexus. *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir.1991). These criteria are easily applied

---

[5]    Based on the lenient "similarly situated" standard, a number of courts in the Southern District of Texas have conditionally certified collective actions under section 216(b) of the FLSA. *See Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008); *Falcon v. Starbucks*, Civil Action No. H-05-0792 (S.D. Tex. Nov. 30, 2005); *Bursell v. Tommy's Seafood Steakhouse*, Civil Action No. H-06-0386 (S.D. Tex. Nov. 3, 2006); *Diller v. Sunoco Logistics Partners Ops., G.P., L.L.C.*, Civil Action No. H-05-3693 (S.D. Tex. May 5, 2006).

to FLSA cases involving misclassification decisions, or where an illegal policy is written down

(for example, where lunch periods are deducted from hours worked whether taken or not).

Informal and unwritten policies, procedures, and practices that contradict stated

company policies are more difficult to analyze, but can still meet the similarly situated criteria.

The commonality requirement can be met by showing "there is a policy, even if not formal."

*Marsh v. Butler County School Sys.*, 242 F.Supp.2d 1086, 1093 (M.D. Ala. 2003); *Barron v.*

*Henry County School Sys.*, 242 F.Supp.2d 1096, 1104 (M.D. Ala. 2003 ).  A legal and factual

nexus "is met when a discrete group of employees provides sufficient evidence of a pattern of

FLSA violations."  *Marsh,* 242 F.Supp.2d at 1094.  As set forth in the next section, Plaintiffs

have more than enough evidence to show that notice is warranted to Shipcom's Trainers,

Accounts Payable Clerks/Financial Analysts, Field Support Engineers, and Travel

Coordinators.

> **D. There is substantial evidence that Plaintiffs and other Trainers, Accounts Payable Clerks/Financial Analysts, Field Support Engineers, and Travel Coordinators are similarly situated.**

Here, the question is whether the Trainers, Accounts Payable Clerks/Financial Analysts,

Field Support Engineers, and Travel Coordinators are alleged by Plaintiffs to be "together the

victims of a single decision, policy or plan." *Id.*  This is not an exacting standard. *Id.*  "Plaintiff

must make a **minimal** showing that: (1) there is a reasonable basis for crediting the assertion

that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the

plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals

want to opt in to the lawsuit."  *Yoakum v. PBK Architects, Inc.*, 2011 WL 4688714, *2 (S.D.

Tex. Oct. 4, 2011) (Miller, J.) (emphasis in original). "The remedial nature of the FLSA and §

216 'militate strongly in favor of allowing cases to proceed collectively.'"  *Lopez v. Bombay*

*Pizza Co.*, 2012 WL 5397192, *2 (S.D. Tex. Nov. 5, 2012) (Miller, J.) (quoting *Roussell v.*

*Brinker Int'l, Inc.*, 2008 WL 2714079, *24 (S.D. Tex. July 9, 2008)).

> **1.     Conditional Certification and Notice Are Appropriate Because Plaintiffs Are Similarly Situated to Potential Class Members.**

> > *a.     There is a Reasonable Basis for Asserting Aggrieved Individuals Exist.*

Shipcom concedes, as it must, that Plaintiffs and the putative class members are non-exempt employees who are entitled to overtime pay.  *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151-52 (9th Cir. 1983); Doc. 19 (no exemption defense raised).   Therefore, there is a reasonable basis for Plaintiffs' assertion that other aggrieved individuals exist.  *See, e.g., Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (Rosenthal, J.) ("the plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan").

> > *b.     Potential Class Members Are Similarly Situated to the Named Plaintiffs.*

"Courts have repeatedly stressed that Plaintiffs must only be similarly – not identically – situated to proceed collectively."  *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 534 (collecting cases).  Collective action status is available even if the class "includes individuals from various positions, locations, etc.; the law is plain that this does not undermine the 'similarly situated' requirement."  *Donohue v. Francis Servs., Inc.*, 2004 WL 1161366, at *3 (E.D.La. May 24, 2004) (citations omitted).  Conditional certification is appropriate "when there is a demonstrated similarity among the individual situations[,] … some factual nexus which binds the named plaintiffs and the potential class members together as victims of an alleged policy or practice." *Villatoro v. Kim Son Rest. LP,* 286 F.Supp.2d 807, 810 (Atlas, J.) (internal quotations omitted). Where a plaintiff is similarly situated to the potential class members with respect to the claims and defenses asserted, he should be permitted to proceed collectively. *Maynor v. Dow Chem. Co.*, 2008 WL 2220394, *6 (S.D. Tex. May 28, 2008).

> *(1)   Each Potential Class Member's Claim Arises from the Same Policy.*

All of the positions at issue—Trainer, Accounts Payable Clerk/Financial Analyst, Field Support Engineer, and Travel Coordinator—are held by non-exempt employees, asserting precisely the same claim (Shipcom's failure to pay overtime), that arises from precisely the same policy (Shipcom's misclassification of the subject positions).   Shipcom admits it reclassified the subject positions.  (Doc. 19 at "Nineteenth Defense" at 9.)  Further, Shipcom's failure to pay overtime to the employees occupying the subject positions and the reclassifying those positions from "exempt" to "non-exempt" provides a clear "factual nexus" tying the Plaintiffs and potential class members "together as victims of an alleged policy or practice." *Villatoro,* 286 F.Supp.2d at 810.   Therefore, Plaintiffs and the potential class members are "similarly situated" with respect to the claims asserted. *Id.*

Permitting a collective action will thus foster "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity."  *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165, 170 (1989); *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) ("Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer").  Because Shipcom's failure to pay overtime and subsequent reclassification provides a "factual nexus which binds the named Plaintiffs and the potential class members as victims of a particular alleged policy or practice," conditional certification is appropriate.  *Heeg*, 907 F. Supp. 2d at 863-64 ("evidence that other [workers] with similar job responsibilities … were subject to the same pay policy … is sufficient to meet the low bar required for conditional classification").

    c.  *There is Sufficient Evidence of Interest to Warrant Notice.*

      *(1)  What is Actually Required?*

  While the third factor evaluates whether there is a reasonable basis for believing other workers would join the case, "in the Fifth Circuit, there is no categorical rule that Plaintiffs must submit evidence at this time that other [workers] seek to opt-in to this case." *White v. Integrated Elec. Technologies, Inc.*, 2013 WL 2903070, *7 (E.D. La. June 13, 2013). "Many courts have determined that plaintiffs do not need to present evidence that potential opt-in plaintiffs desire to opt-in." *Barajas v. Acosta,* 2012 WL 1952261, *3 (S.D. Tex. May 30, 2012) (Ellison, J) (emphasis added); *Page v. Nova Healthcare Mgmt., L.L.P.*, 2013 WL 4782749, *5 (S.D. Tex. Sept. 6, 2013) (Lake, J.) ("The court agrees with the latter camp that Plaintiffs need not present evidence [that other workers wish to opt-in] at this stage of the certification process."); *Dreyer v. Baker Hughes Oilfield Operations, Inc*., 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (showing that others will opt-in "is not a statutory requirement, and several courts have rejected it"); *see also, West v. Lowes Homes Centers, Inc*., 2010 WL 5582941, *10 (W.D. La. Dec. 16, 2010) (same, collecting cases).

  Magistrate Judge Johnson has repeatedly held that "a plaintiff need not present evidence … that aggrieved individuals actually want to opt in to the lawsuit." *See, e.g., Villarreal v. St. Luke's Episcopal Hosp*., 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010). Judge Johnson articulated "several reasons for this." *Id.* "First, as already stated, this element is not a statutory requirement at this stage." *Id.* "Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited." *Id.* "Rather, the Fifth Circuit's discussion of the *Lusardi* approach only requires, at the first stage, that 'putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class.'" *Id.*, (quoting *Acevedo v. Allsup's Convenience*

*Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (emphasis added)).  "Third, unlike under Rule 23, there is no numerosity requirement in a FLSA class action lawsuit under the *Lusardi* approach." *Id.* (citing *Badgett v. Tex. Taco Cabana, L.P.*, 2006 WL 367872, at \*2 (S.D. Tex. Feb. 14, 2006)).  "Fourth, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes."  *Id.* (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).

Judge Rosenthal noted that requiring "an FLSA plaintiff who does not know the identities of the members of the proposed class to provide information about class members' desire to opt in could require the plaintiff to produce the very information that she sought to obtain through conditional certification and notice."  *Detho v. Bilal*, 2008 WL 2962821, \*3 (S.D. Tex. July 29, 2008); *see also, Wise v. Patriot Resorts Corp.*, 2006 WL 6110885 (D. Mass. Feb. 15, 2006) ("it is unrealistic to expect a party to consider whether to "opt-in" to a collective action before that party is aware of the pendency of the action").  Still other courts have noted that "requiring plaintiffs in § 216(b) actions to have some unknown number of persons decide whether to opt in places plaintiffs in the position of communicating with potential litigants without court supervision or guidance, leaving plaintiffs subject to allegations of improper solicitation and 'tainting' of the putative class."  *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002).

Plaintiffs seek to send notice to potential class members through a court-approved notice.  *Id.*  That way, "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed."  *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

## IV.

### RELIEF SOUGHT: DISCLOSURE OF NAMES AND ADDRESSES AND NOTICE TO TRAINERS, ACCOUNTS PAYABLE CLERKS/FINANCIAL ANALYSTS, FIELD SUPPORT ENGINEERS, AND TRAVEL COORDINATORS

Plaintiffs have demonstrated the existence of a factual and/or legal nexus binding them to potential class members as victims of a policy or practice of Shipcom.  Plaintiffs have detailed their collective action allegations through declarations.   Plaintiffs have presented evidence that other similarly situated individuals exist, and that Shipcom misclassified its Trainers, Accounts Payable Clerks/Financial Analysts, Field Support Engineers, and Travel Coordinators. This evidence more than satisfies the "lenient" standard for collective action notice.  *Mooney*, 54 F.3d at 1213-14.

Plaintiffs seek an Order from this Court requiring Shipcom to produce the names and addresses of all current and former Trainers, Accounts Payable Clerks/Financial Analysts, Field Support Engineers, and Travel Coordinators employed by Shipcom between March 18, 2013 and the present.  Plaintiffs also seek permission to issue notice to these individuals of the existence of this lawsuit and of their right to join it if they meet certain criteria.  Specifically, the notice will clearly indicate that only those Trainers, Accounts Payable Clerks/Financial Analysts, Field Support Engineers, and Travel Coordinators who worked in excess of forty (40) hours per workweek, and who were denied overtime compensation for hours worked in excess of forty (40) hours per workweek, are eligible to join the lawsuit.  Plaintiffs' proposed notice and consent form are attached as Exhibits G and H, respectively.  Plaintiffs request that Shipcom provides the contact information within 20 days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices.

## V.
### CONCLUSION

Plaintiffs have met their burden to produce evidence supporting the collective allegations in their First Amended Collective Action Complaint. They have presented evidence that Shipcom misclassified them and other Trainers, Accounts Payable Clerks/Financial Analysts, Field Support Engineers, and Travel Coordinators, and required them to work in excess of forty (40) hours per work week without receiving overtime compensation. Plaintiffs' claims are supported by their declarations. Based on the evidence presented, and the applicable legal standards, the Court should order disclosure of the contact information requested herein and permit Plaintiffs to issue notice to the potential class members.

Respectfully submitted,

SHELLIST | LAZARZ | SLOBIN LLP

By: */s/ Daryl J. Sinkule*
MARK G. LAZARZ
State Bar No. 12069100
Federal ID No.12105
mlazarz@eeoc.net
DARYL J. SINKULE
State Bar No. 24037502
Federal ID No. 34842
dsinkule@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

ATTORNEYS FOR PLAINTIFFS
AND MEMBERS OF THE CLASS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record pursuant to the electronic filing system for the United States District Court for the Southern District of Texas on this, the 10th day of January, 2017.

Kerry E. Notestine
Karmyn W. McCloud
Luke C. MacDowall
Littler Mendelson, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010

/s/ Daryl J. Sinkule
DARYL J. SINKULE