1                    IN THE UNITED STATES DISTRICT COURT

2                    FOR THE SOUTHERN DISTRICT OF TEXAS

3                              HOUSTON DIVISION

4    NOVICK, ET AL                                4:16-cv-730

5

6    V.                                           April 9, 2018
                                                  Houston, Texas
7    SHIPCOM WIRELESS, INC.                       2:03 p.m.

8

9                      FINAL PRETRIAL CONFERENCE

10           BEFORE THE HONORABLE CHRISTINA A. BRYAN

11               UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For Plaintiffs            Todd Slobin
                               Daryl J. Sinkule
14                             Shellist Lazarz Slobin, LLP
                               11 Greenway Plaza
15                             Suite 1515
                               Houston, Texas 77046
16

17   For the Defendant         Kerry E. Notestine
                               Luke C. MacDowall
18                             Littler Mendelson, PC
                               1301 McKinney
19                             Suite 1900
                               Houston, Texas 77014
20

21   Case Manager             Cynthia Jantowski

22   Electronic Recording     Lauren Webster
        Operator               United States District Clerk's
23                                Office
                               515 Rusk
24                             Houston, Texas 77002

25   Proceedings from official electronic sound recording;
     transcript produced by court approved transcriber.

     DIGITAL SCROLL TRANSCRIPTION                      281.382.9862

1           THE COURT:  Good afternoon.

2                Please be seated.

3                All right.  Mr. MacDowall.

4        MR. MAC DOWALL:  Yes, Your Honor.

5        THE COURT:  And Mr. Notes- -- Notestine?

6        MR. NOTESTINE:  Notestine.

7        THE COURT:  Notestine.  Thank you.

8                And Mr. Slobin.

9        MR. SLOBIN:  Yes, Your Honor.

10       THE COURT:  And correct me on the pronunciation of

11  your name.

12       MR. SINKULE:  Sinkule.

13       THE COURT:  Sinkule.

14       MR. SINKULE:  Yes.

15       THE COURT:  Okay.  Wonderful.

16               All right.  I have – I think it makes the most

17  sense to start with the Motion for Continuance, if that is –

18  unless you all think that there's something that we need to

19  address before we get to the Motion for Continuance.

20       MR. SINKULE:  No, Your Honor.

21       THE COURT:  Okay.

22               So, it is Plaintiff's motion, correct?

23       MR. SINKULE:  Yes, Your Honor.

24       THE COURT:  Are you opposed?

25       MR. NOTESTINE:  Well, it depends on how much of a

1  continuance they're asking for.  It's not real clear from the

2  motion.  We don't mind a few days, a day or two, but, I mean,

3  if it goes over two weeks I know I'll – I have got to be out

4  of town the whole first week of May.  I'm leaving on Tuesday.

5  It's a Monday, I believe.

6          THE COURT:  Okay.

7          MR. NOTESTINE:  It will be April 30th I'm leaving.

8          THE COURT:  Okay.

9          MR. NOTESTINE:  I'm, generally, available the next

10 two weeks, starting the 16th.

11         THE COURT:  Starting the 16th of May.

12         MR. MAC DOWALL:  Your Honor, I do have a conflict

13 April 26th to the 30th, so.

14         THE COURT:  Okay.  Well, let's first all start with

15 the length.  I take it from the motion you're talking about 21

16 days or so to get airfare.

17         MR. SINKULE:  I was thinking – we were thinking the

18 first week of May or the third week of May, something like –

19 like that if there's a conflict –

20         THE COURT:  All right.

21         MR. SINKULE:  -- with the other side.

22         THE COURT:  How does the first week of May or the

23 third week of May look?

24         MR. NOTESTINE:  The first week of May is a problem.

25 I'm supposed to be on the first on Tues- -- starting on

4

1   Tuesday morning for us.

2          THE COURT:  Okay.  Then how about the third week of

3   May?

4          MR. NOTESTINE:  I think – you mind if I look at my

5   calendar?

6          THE COURT:  No, please; I'm asking Ms. Jantowski to

7   look at my calendar.

8      (Court and Clerk confer off the record.)

9          MR. NOTESTINE:  I do not – I've been asked to come in

10  and help try a case from one of our lawyers, and there's a

11  docket call.  I have no idea actually when I'm going to trial

12  on that case.  It's supposed to be a Mason (phonetic) client.

13         THE COURT:  Yeah.  Well, the third week of May is not

14  going to work for me, because my daughter is graduating from

15  college in Vermont, and the Fifth Circuit conference also

16  that – is also that week.

17         MR. SINKULE:  Well, let me look.

18              And so, I guess the first – the 14th, which I

19  don't know if that's the – that's how you look at it, the

20  second or third week of May?

21         THE COURT:  Ms. Jankowski?

22         THE CLERK:  The first full week of May is, like, May

23  2nd.

24         MR. SINKULE:  So, I know that first week, like, May

25  1, that week looks good.  May 14th, the week of that week

1    looks good.

2          MR. NOTESTINE:  Well, Your Honor, I can't actually

3    say when we are willing to go to trial.  So, we weren't

4    actually able to consult with our clients about whether they

5    would be available really on a one-day trip witness and

6    possibly one other they've designated.

7          THE COURT:  Well, let me ask another question.

8               Originally, you guys gave us a three – I think

9    two-day trial.  You said that the case would take two days to

10   try, and I think something you filed more recently listed a

11   significantly longer period of time.

12         MR. NOTESTINE:  I said three days.  I think –

13   You know, but it's going to start – do voir dire and pick a

14   jury and they have five Plaintiffs.  And we basically have one

15   witness, maybe two witnesses, so, like – and then we do

16   closing arguments.  It's going to be three days, Your Honor.

17         MR. SINKULE:  I think that's right.  I think we said

18   two to three days.  I'm not sure where we are.

19         MR. NOTESTINE:  Yeah.

20              We have -- we don't mind, you know –

21         THE COURT:  Okay.

22         MR. NOTESTINE:  -- a few days to get a lower airfare

23   or something, but –

24         THE COURT:  Well, I don't think a few days is going

25   to get a lower airfare.  I think you're talking about 14 to 21

1    days at a minimum.

2                    Is that accurate?

3        MR. SINKULE:  I think that is probably right.

4        THE COURT:  And in part, I set this trial to start on

5    the 16th on the basis it would be a two-day trial, because I

6    will be out on the 20th and I wanted to make sure that – I

7    thought that would give the jury plenty of time to deliberate

8    and for the case to be completed.

9        MR. NOTESTINE:  I don't think there will be a problem

10   with that.  I am virtually certain we will be done and that

11   would be – and then they can – unless the jury is out for a

12   longer period of time.

13       THE COURT:  Well, let me say this.  I'm inclined to

14   grant the Motion for Continuance, because I personally am not

15   pleased with the amount of time that it took the Court or me

16   to get your motion ruled on.  That was just a factor when I

17   came on the Bench and everything that came – you know – that

18   was in line in front of your motions.

19            So, I do have – I am sympathetic to the idea

20   that the motion was addressed very recently.  I'm going to

21   make sure that whatever the new trial setting is is convenient

22   for all parties.  So, I can ask you all to go back and come up

23   with a date, run those dates by the Court, and we can find out

24   if those dates will work for me.

25       MR. NOTESTINE:  Yeah.  Would you check – might as

1   well the 10th or the 7th is one of the weeks of – in May and

2   then we'll check to see if that's a problem.

3            THE COURT:  Okay.

4            MR. NOTESTINE:  You said your daughter's –

5            THE COURT:  I have twins –

6            MR. NOTESTINE:  Oh.

7            THE COURT:  -- that are graduating from college.  One

8   is at Rice.  His graduation is on the 12th of May, and the

9   other one is in Vermont and her graduation is on the 25th, but

10  I will be out starting the – what's the first day of the Fifth

11  Circuit conference?  Is it the 23rd or the 25th?

12           THE CLERK:  Twenty-third.

13           THE COURT:  And so, I will be out starting the 23rd.

14  So that third week in May – the week of the 21st is not going

15  to work.  So, that leaves us –

16           MR. NOTESTINE:  The next week is Memorial Day.  It

17  might be hard to get a flight, with the whole reason of this

18  flight.  It is probably a harder weekend to get a flight

19  around.

20           MR. SINKULE:  How about the week of the 14th, if

21  that's a good day.

22           MR. NOTESTINE:  The week of the 14th is fine with my

23  schedule, personally.

24           THE COURT:  Well, I'm on criminal docket.  I'm on

25  criminal docket that week, so that won't work.

1                How about the week of the 7th?

2           MR. SINKULE:  I know that Mr. Novick, the first named

3     Plaintiff, is unavailable the 7th, 8th and 9th of May; one of

4     those incentives is a –

5           MR. NOTESTINE:  Well, if – they have five parties,

6     Your Honor.  I find it hard to believe that there may be

7     some – somebody is having a problem virtually every week.

8                What about – what about the week of April 23rd,

9     and that's two weeks?

10          THE COURT:  I'm in Laredo.

11          MR. NOTESTINE:  Oh, you're in Laredo.

12          THE COURT:  We're short a Magistrate Judge in Laredo.

13               Well, what about moving into June?

14          MR. NOTESTINE:  I have an arbitration in Rochester,

15     New York, on the 12th and 13th.  I think other than that I

16     should be – I am open.

17          MR. SINKULE:  My calendar is open the first full week

18     of June.

19          THE COURT:  Which is the 5th – I mean the 4th through

20     the –

21        (Court and Clerk confer off the record.)

22          THE COURT:  Mr. Notestine, are you in the *Hendricks*

23     case?

24          MR. NOTESTINE:  Yes.

25               Don't tell me we have a trial then, too.

1            MR. SINKULE:  We are as well.

2            THE COURT:  So, that's scheduled to start on the

3    18th.

4                What about trying this case the week before or

5    after that?

6            MR. NOTESTINE:  The week before is when I'm going to

7    be in –

8            THE COURT:  That's when you're in your medi- --

9            MR. NOTESTINE:  -- New York.

10           THE COURT:  -- in your arbitration?

11           MR. NOTESTINE:  It's an arbitration not a mediation.

12   It was –

13           THE COURT:  Okay.

14           MR. NOTESTINE:  I probably need to prepare the

15   witnesses on the 11th and meet on the 12th or 13th and then

16   probably – that whole week going to be trouble, if we are

17   going –

18           THE COURT:  Okay.

19           MR. NOTESTINE:  -- to fly back on the 14th, Your

20   Honor.

21           THE COURT:  Okay.

22               And what about the –

23           MR. NOTESTINE:  The first week is open for me.

24           THE COURT:  The first week of June?

25           MR. NOTESTINE:  Yeah.

1         MR. SINKULE:  Yeah, the week of the 4th of June and

2   the 27th.

3         THE COURT:  Okay.  So, let's do this.

4         Let's tentatively set this case for June 4th.  I

5   have to clear my schedule, because I am on criminal duty the

6   6th, the 7th and the 8th.  So, I'm going to see if I can clear

7   the 6th and the 7th, at least.

8         And, Ms. Jantowski, if you would like to keep

9   the 8th, with the possibility that we have a jury coming up.

10  I guess we are going to need to try to change that, too.

11     (Court and Clerk confer off the record.)

12        MR. NOTESTINE:  Your Honor, I was just on a trial

13  docket with Judge Hittner, and he told us that we had a date

14  certain and I wanted to be – we got kicked off because of a

15  current criminal trial, and he has another date so it was

16  kicked off the criminal – are you in the same as that or –

17  because you are a Magistrate?  Is that the way you want to go?

18        THE COURT:  No.  It is different for the Magistrate

19  judges.  So, the – the District Court judges have to set the

20  criminal cases preferentially because of the Speedy Trial Act

21  issues.  Magistrate judges take criminal duty on a rotating

22  basis for two weeks at a time.

23        MR. NOTESTINE:  And you just go – you have criminal

24  cases during –

25        THE COURT:  And we hear – and when Magistrate judges

1   are on criminal duty it's all day, every day – warrants,

2   anything that comes in on the criminal docket and do the

3   rest then –

4           MR. NOTESTINE:  Then it is not on the other things,

5   so you get –

6           THE COURT:  Correct.  I'm in charge of my schedule

7   with respect to the criminal cases and other cases.

8           MR. NOTESTINE:  That's our case.

9      (Court and Clerk confer off the record.)

10          THE COURT:  All right.  Assuming that I can clear the

11  schedule for the 6th – at least the 6th and 7th, we will go

12  forward on the 4th.

13             Do you all want to do the motions today?  Do you

14  want to take up motions today, or do you want to wait until

15  closer to trial?

16          MR. SLOBIN:  Your Honor, I prefer that we wait until

17  closer to trial.

18          MR. NOTESTINE:  Yeah, I –

19          MR. SLOBIN:  Anything that we can work out in

20  advance – because I know we just got the limine on Friday.  I

21  think there are some things that we actually to, so – and

22  we've worked with this firm.  We're happy to try to streamline

23  everything to try to get the case done.  I think we can

24  probably get it done in that Monday and Tuesday of that week

25  and then maybe to send it to the jury on Wednesday, if we're

1  running on time.

2          MR. NOTESTINE:  That's possible.

3              Do you have the lawyers do their own voir dire?

4          THE COURT:  Mostly.

5          MR. NOTESTINE:  Okay.

6          THE COURT:  Yes.  I'll ask the basic general

7  questions, introduce the parties.  If you want me to do

8  anything speci- -- you know, case specific, I will.

9  Otherwise, I prefer that you all – I mean, you're the people

10 who need to connect with the jury, so I'm happy to let you do

11 that.

12             I think usually for a case like this I would say

13 no more than 30 minutes per side.

14         MR. SLOBIN:  That's fine, Your Honor.

15         MR. NOTESTINE:  That's fine.

16         THE COURT:  With respect to the Motions in Limine,

17 they all looked really pretty standard, perhaps with the

18 exception of the issue of the subsequent remedial measures.

19             Do you think you might work out an agreement on

20 these two witnesses that were identified late?

21         MR. SINKULE:  Well, I guess with respect to –

22         THE COURT:  This –

23         MR. SINKULE:  -- Mr. Diaz – he was actually

24 identified in Defendant's first Initial Disclosures back in

25 2016.  His name has come up a number of times in depositions

1  and the different documents that have been produced, so.

2          THE COURT:  And they're both –

3          MR. SINKULE:  We can get them solved, but.

4          THE COURT:  They're both were – they're both at least

5  current or former employees.

6          MR. NOTESTINE:  He wasn't a former employee at that

7  time.  He is now.  He's been moved out.  We don't have contact

8  with him.

9              The other two, Mr. Sud and Mr. Goenka, we – we

10  don't have a problem with them calling him, but – and they did

11  not – you guys, dropped Carnes (phonetic) – I think, Carnes

12  from the witness list I saw.

13          MR. SINKULE:  We dropped Ms. Carnes in light of –

14          MR. NOTESTINE:  There is only one person left.

15          THE COURT:  Diaz, okay.

16          MR. NOTESTINE:  That's Mr. Diaz.

17          THE COURT:  All right.  Well, let's see if he can –

18          MR. NOTESTINE:  And we still – yeah.  We oppose him

19  being called as a witness, unless they are identified as a

20  potential witness, primarily, within the discovery deadline.

21          THE COURT:  Well, was he on your witness list, the

22  Disclosures?

23          MR. NOTESTINE:  He was on our original Disclosures.

24          THE COURT:  Okay.

25          MR. NOTESTINE:  But never on the witness list.

1          THE COURT:  Okay.  All right.  But those are the only

2  things that to me look like they were, well, controversial.

3              What about – are you going to have opposition to

4  the motion for Defendants to open and close?

5          MR. SINKULE:  We actually do, Your Honor, yes.

6          THE COURT:  Okay.  All right.

7              So, before our next meeting if you'll submit

8  some sort of – it could be an informal letter or brief or

9  something – something giving me the bas- -- your legal basis

10 for that opposition.

11         MR. SINKULE:  Yes, Your Honor.

12         THE COURT:  Uh- --

13         MR. NOTESTINE:  It doesn't look like any exhibits are

14 going to be an issue.  They've identified the ones that we

15 have, so.  So, it looks like one witness and a motion and we

16 will close.  So, that's pretty much it.

17         THE COURT:  All right.

18             And the jury instructions that you gave me are

19 the pattern instructions, correct?

20         MR. NOTESTINE:  Yeah.  I tell you – and one of the

21 instructions we give – we gave an advisory instruction on the

22 good faith defense.

23         THE COURT:  Um-hmm.

24         MR. NOTESTINE:  This is my thoughts on this, Judge.

25             We believe that the subsequent remedial

1   measures, which apply to two – two people, are not admissible

2   under Rule 407.  If – if for some reason the Court would

3   determine that it is admissible – well, they want – we think

4   what happened – well, if that's not admissible and that issue

5   would be presented to the Court outside the presence of the

6   jury to make a ruling on the good faith defense.

7            THE COURT:  Okay.

8            MR. NOTESTINE:   Because that's a – I don't think

9   there's any dispute that's an issue for the Court to decide.

10  And so, if we exclude that under 407 as being irrelevant to

11  liability, which I think we cited a bunch of cases to support

12  that, and then submitted that – whatever evidence that was in

13  order to – that's kind of tied in with a good faith defense,

14  Your Honor.

15            A good faith defense is that we did an audit,

16  re-classified two of these guys and pay them their overtime

17  for sure – their overtime.  We believe that that should all be

18  addressed outside the – outside the presence of the jury and

19  so.

20            If the Court were to rule for some reason that

21  the – that the subsequent remedial measures are admissible,

22  our position would be, well, we need some explanation to the

23  jury about why we're – why we're discussing this,  And so, our

24  thought would be, well, we would – we would present an

25  argument – you know, present good faith evidence, the audit,

1   which is what that resulted in, to the jury; it would be an

2   Advisory Opinion question to the jury about the good faith,

3   and then the Court would either accept it or reject it.

4            But that would allow us to explain why this

5   evidence – why this happened.

6            THE COURT:   And what's the basis – what's their

7   basis for believing it's admissible?

8            MR. SINKULE:   Well, I mean, it's – that is what this

9   case is about, and it's so intertwined – you feel like the

10  re-classification is so intertwined with the Defendant's good

11  faith defense.  And so, what –

12           THE COURT:   And if that's going to be addressed by

13  the jury, why would the jury want to hear the evidence of

14  re-classification?

15           What – like, what would be – if it's not – if

16  the evidence is not admissible as to liability, what other

17  basis would there be to admit it?

18           MR. SINKULE:   Well, I mean, I think all kinds of

19  information comes in twice in that trial, and the jurors can

20  decide what's important and what's not, to the extent it

21  even – if it came in and we needed an instruction from the

22  Court to – you know, if the jury should – doesn't want to

23  consider this piece or whatever, we're certainly fine with

24  that.  But, you know, it is important I think, and I just

25  think that –

1          THE COURT:  Important to show good faith, lack of

2    good faith; anything else?

3          MR. SINKULE:  Well, it's mostly lack of good faith

4    and then, you know, if it comes up with respect to

5    impeachment, you know, we would have to go there at that time

6    and as I spoke – you know, we don't know that I would submit.

7               You know, they've introduced or have proposed

8    things if it is – which is an Advisory Opinion from an

9    attorney, Mr. Sud, to the company.  And we have also indicated

10   that that's an exhibit for us.  So, if we're talking about

11   those sorts of things, I think that it's important for the

12   jury to have a complete picture.

13         MR. NOTESTINE:  Well, we had the list of exhibits,

14   Your Honor, and our position is that that is a exhibit for the

15   Court to consider.  But, of course, if the Court for some

16   reason allows that evidence in, we would want the audit and

17   the evidence in front of the jury in order to explain why he

18   did this.

19         THE COURT:  So, this Advisory Opinion is the audit

20   that you referred to?

21         MR. NOTESTINE:  The exhibit –

22         THE COURT:  The exhibit – is the exhibit that you

23   all understand is the evidence.

24         MR. NOTESTINE:  Yes, that's the audit, right; that's

25   the audit.

1          THE COURT:  All right.  Okay.

2              Okay.  Anything else that we haven't discussed –

3  well, we started talking about the charge, and I think –

4          MR. NOTESTINE:  I think – otherwise, I think we're in

5  agreement other than that Advisory Opinion; aren't we?

6          MR. SINKULE:  I think that's right.  I think there

7  are just a few issues that we talked about that we have

8  disagreements on, which is not maybe Novick.  When we are

9  getting ready for trial, yeah, it is pretty tailored, I think

10  right now.

11          MR. NOTESTINE:  Yeah.  I mean, it's pattern jury

12  charge and then we directly quoted out some regulations that

13  are relevant to the determination of whether they are exhibits

14  or is not and so.

15              And then, the only other thing is that which we

16  believe – I mean, we offered it, but we believe that it's an

17  issue for the Court that should not be submitted to the jury.

18          THE COURT:  That is -- what is an issue for the Court

19  that should not be –

20          MR. NOTESTINE:  Good faith.  Good faith evidence.

21          THE COURT:  Yes, okay.

22              Okay.  All right.  Nothing?  We may be finished

23  for today.  Let –

24              Have we heard anything back from anyone

25  regarding the schedule?

1           (Court confers with Clerk off the record.)

2               THE COURT:  Okay.  Just before I let you all go, in

3    the event that I cannot clear my schedule for the 6th and the

4    7th – I know the 11th is out; the 18th we're in trial on the

5    other case.  And what did we say with the week – the last week

6    of June?  Someone had an issue there?

7               MR. SINKULE:  No issue on our side.

8               THE COURT:  Mr. Notestine, did you have an issue with

9    the last week of June?

10              MR. NOTESTINE:  I don't, no.

11              THE COURT:  Is there any issue with the – with this

12   case going to trial after the *Hendricks* case?

13              MR. SINKULE:  Not that I'm aware of.

14              MR. NOTESTINE:  We're negotiating.

15              THE COURT:  Okay.

16                In the event I cannot clear my schedule, could

17   you please hold on to that last week of June?

18              MR. SINKULE:  Yes.

19              MR. NOTESTINE:  We shall.

20              THE COURT:  And we'll let you know as soon as we get

21   the permission.

22              MR. SLOBIN:  Your Honor –

23              THE COURT:  Yes.

24              MR. SLOBIN:  -- one thing just for clarification.

25              THE COURT:  Yes.

1          MR. SLOBIN:  The three or four issues that we kind of

2    talked about here today are we just going to pick these back -

3    other than the kind of letter briefing you're looking for, are

4    we going to pick these back up for the trial, or did you want

5    any other briefing from us on those issues?

6          THE COURT:  I don't think I need any other briefing.

7    If you want to respond to the Motion in Limine –

8          MR. SLOBIN:  Okay.

9          THE COURT:  -- at the – well, that's what I asked you

10   to respond to, right?

11         MR. SLOBIN:  Yeah.

12         THE COURT:  It was the issue of the subsequent

13   remedial measures.

14         MR. SLOBIN:  Right.  But it was the – it was that the

15   good faith advisory whole – you know, the whole – double-edged

16   sword issue.  I just wanted to make sure you had enough

17   information on that, or I want to make sure or address that

18   we're going to go back and talk about it.

19         THE COURT:  I'll put it to you this way.  I'm happy

20   to - if you want to submit something else, I will definitely

21   review it.

22         MR. SLOBIN:  Okay.

23         THE COURT:  I'm not going to require you to submit

24   something else.

25         MR. SLOBIN:  I appreciate that, Your Honor.


DIGITAL SCROLL TRANSCRIPTION                         281.382.9862

1          THE COURT:  It does make sense to me that if – that

2    if the – what we're calling the subsequent remedial measures

3    or the re-classification comes in, it makes sense to me that

4    the jury could then hear evidence –

5          MR. SLOBIN:  Yeah, that –

6          THE COURT:  -- about how that happened.

7          MR. SLOBIN:  We actually may be fine – I don't mean

8    to – I think – but I think we actually may be fine with that

9    arrangement, if that's what we get to.

10         MR. NOTESTINE:  That's not our preference, Your

11   Honor.

12         THE COURT:  Okay.

13         MR. NOTESTINE:  Our preference is that it's not

14   admissible and that the Court considered those issues on the

15   fifth, Your Honor.

16         THE COURT:  And we – you know, one thing you might

17   want to address is whether if you – whether you believe that –

18   on the issue of getting an Advisory Opinion from the jury on

19   the good faith issue.  It seems to me if you're going to put

20   that issue in front of the jury, then the Advisory Opinion

21   seems appropriate.  So, I don't know if you want to brief that

22   at all.

23         MR. SLOBIN:  Yeah, sure.  We have a habit of, like,

24   being to brief things, so we will probably send you something,

25   Your Honor.

1          THE COURT:  Okay.

2               I think that's it.  Hopefully, you all will come

3    to agreement on everything else.

4               Anything else that we should take up today?

5          MR. SINKULE:  Not from our side, Your Honor.

6          THE COURT:  And you –

7          MR. SLOBIN:  Congratulations on your kids.

8          THE COURT:  Oh, thank you.  That is – it's

9    interesting to have twins in college, so that's going to be a

10   great thing to get them out.

11              The number of witnesses you – you said that you

12   had – I know you mentioned – there are several listed on your

13   Joint Pretrial Order, but what is your best guess as to the

14   number that we actually will have at trial?

15         MR. NOTESTINE:  We just have one besides the

16   Plaintiffs.

17         MR. SINKULE:  And I think it's all eight for us that

18   we mostly we will likely call – I don't know that, being my

19   first time.

20         THE COURT:  All eight?

21         MR. SINKULE:  Yes.

22         THE COURT:  Okay.

23         MR. SINKULE:  Some of them we might think would be

24   very brief, and, yeah, but the five of those eight are

25   Plaintiffs.

1              THE COURT:  Okay.

2                   Okay.  All right.

3                   That's all I have unless you all have something

4    else.

5         MR. SINKULE:  Nothing further from us.

6         THE COURT:  You may be excused.

7                   Thank you.

8         MR. NOTESTINE:  Thank you, Your Honor.

9         MR. SLOBIN:  Thank you, Your Honor.

10        THE COURT:  And we'll be in touch regarding the

11   dates.

12        MR. SINKULE:  Thank you.

13       (Proceedings concluded at 2:30 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF TEXAS

 3                       HOUSTON DIVISION

 4

 5      I, Linda Griffin, court approved transcriber, certify that

 6   the foregoing is a correct transcript from the official

 7   electronic sound recording of the proceedings in the above-

 8   entitled matter.

 9

10   /s/ Linda Griffin                      March 5, 2019
     Linda Griffin                             Date
11   Digital Scroll Transcription

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```